# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| MARSHA REAVES, )<br>      Plaintiff, )<br>)<br>      v. )<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of Social Security )<br>Administration, )<br>      Defendant. ) | CAUSE NO.: 2:15-CV-279-JEM |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff on July 23, 2015, and on Plaintiff's Brief in Support of Her Motion to Reverse the Decision of the Commissioner of Social Security [DE 14], filed by Plaintiff on December 10, 2015. The Commissioner filed a response to Plaintiff's brief on March 24, 2016, and Plaintiff filed a reply on April 8, 2016.

## I. Procedural Background

In April 2012, Plaintiff applied for disability insurance benefits with the United States Social Security Administration ("SSA"), alleging that she had become disabled as of September 2, 2000. Plaintiff's claim was denied initially and on reconsideration. On January 28, 2014, Administrative Law Judge ("ALJ") D. Bruce held a hearing at which Plaintiff, represented by counsel, and a vocational expert testified. On February 28, 2014, the ALJ issued a decision denying Plaintiff benefits on the ground that Plaintiff was not disabled.

In the opinion, the ALJ made the following findings under the required five-step analysis:

1. The claimant did not engage in substantial gainful activity from April 5, 2012, the application date, to the date of the hearing.

2. The claimant had the following severe impairments: diabetes mellitus, bilateral knee osteoarthritis, lumbar spine degenerative changes, obesity, and depression.

3. The claimant did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments in 20 CFR 404, Subpart P, Appendix 1.

4. The claimant had the residual functional capacity ("RFC") to lift and carry up to twenty pounds occasionally and ten pounds frequently, stand or walk for about six hours of an eight-hour workday, and sit for at least six hours of an eight-hour workday. The claimant could also occasionally climb ramps and stairs, balance, stoop, and crouch, but she could never crawl, kneel, or climb ladders and scaffolds. The clamant could perform simple tasks and make simple work-related decisions. The clamant could interact no more than frequently with supervisors, co-works, and the public.

5. The claimant had no past relevant work.

6. The claimant was forty-nine years old, which is defined as a younger individual age eighteen to forty-nine, on the date the application was filed. The claimant subsequently changed age category to closely approaching advanced age.

7. The claimant had a limited education and was able to communicate in English.

8. Because the claimant did not have any past relevant work, transferability of job skills was not an issue.

9. Considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could preform.

10. The claimant was not under a disability, as defined in the Social Security Act, from April 5, 2012, the date the application was filed, through the date of the hearing.

On June 15, 2015, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner. On July 23, 2015, Plaintiff filed the underlying Complaint, seeking reversal of the adverse SSA determination.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42

U.S.C. § 405(g).

**II.     Facts**

In June 2010, Plaintiff was treated for diabetes and osteoarthritis in her knees. Her doctor observed that she had decreased range of motion in both knees and that she had difficulty moving her shoulder without pain. Plaintiff's doctor recommended that she adhere to a strict diabetic diet and exercise more often to combat her symptoms. In August 2011, Plaintiff reported that she felt tired and depressed. A blood test revealed that her blood glucose levels were very high. Plaintiff's doctors provided her with insulin samples to treat her diabetes.

In May 2012, Plaintiff sought treatment for tension headaches, occasional incontinence, and hypoglycemia. Plaintiff's doctors prescribed Vimovo to treat the headaches and instructed Plaintiff to reduce her insulin intake. In July 2012, X-rays revealed osteophytes in Plaintiff's left knee; narrowing of the medial, lateral, and patellofemoral compartments in her right knee; and osteophytes in her lumbar spine.

In October 2012, Plaintiff went to the emergency room, having run out of insulin two months earlier. During that visit, Plaintiff admitted to suicidal thoughts and demonstrated anxiety over returning home. Plaintiff was diagnosed with major depressive order and was discharged. Six days later, Plaintiff returned to the hospital, complaining of insomnia, low energy, and anxiety. Plaintiff reported to doctors that she had been hearing voices and seeing shadows. Her doctors prescribed an anti-psychotic medication.

In January 2013, Plaintiff visited her doctor and presented with high glucose levels. Plaintiff reported that she had not taken insulin in months. In October 2013, Plaintiff's doctors observed edema in both Plaintiff's legs. Later that same month, Plaintiff visited an emergency room reporting additional suicidal thoughts. Plaintiff also reported that she had been talking to a voice in her head

she called "Sarah". Plaintiff was hospitalized for ten days and was diagnosed again with recurrent major depression.

In June 2012, a consulting physician, Dr. Azela Perez, examined Plaintiff at the SSA's request. Dr. Perez noted that Plaintiff was tearful during the examination. Plaintiff complained of lower back pain and knee stiffness. Dr. Perez also observed that Plaintiff had edema, tenderness, and decreased range of motion in her right knee. Plaintiff demonstrated difficulty walking and squatting, and walked slowly without a cane. Plaintiff told Dr. Perez that she had used a cane previously, but it had been stolen. Plaintiff also reported fatigue, low energy, difficulty concentrating, feelings of worthlessness, insomnia, and homicidal and suicidal thoughts.

### III.     Standard of Review

The Social Security Act authorizes judicial review of the final decision of the SSA and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the

4

question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "A reversal and remand may be required, however, if the ALJ committed an error of law or if the ALJ based the decision on serious factual mistakes or omissions." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (citations omitted).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable

5

physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Does the impairment meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's residual functional capacity, age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform

despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) (citing SSR 96-8p, 1996 WL 374184 (July 2, 1996); 20 C.F.R. § 404.1545(a)) (other citations omitted). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## IV. Analysis

### A. Residual Functional Capacity

Plaintiff asserts that the ALJ's RFC finding was legally inadequate. Plaintiff argues that the ALJ did not properly assess Plaintiff's mental and physical impairments. The Commissioner argues that the ALJ's RFC analysis was proper and that there was substantial evidence in the record to support both mental and physical RFC conclusions.

The RFC is an assessment of what work-related activities the claimant can perform despite her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *see also* 20 C.F.R. §§ 404.1545(a)(1); 416.1545(a)(1). In evaluating a claimant's RFC, an ALJ is expected to take into consideration all of the relevant evidence, including both medical and non-medical evidence. *See* 20 C.F.R. §§ 404.1545(a)(3); 416.945(a)(3). Although an ALJ is not required to discuss every piece of evidence, he must consider all of the evidence that is relevant to the disability determination and provide enough analysis in his decision to permit meaningful judicial review. *Clifford*, 227 F.3d at 870; *Young,* 362 F.3d at 1002. In other words, the ALJ must build an "accurate and logical bridge from the evidence to his conclusion." *Scott*, 297 F.3d at 595 (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)).

Concerning Plaintiff's mental RFC, the ALJ determined that Plaintiff's depression was a severe impairment, AR 14, and noted that Plaintiff had "moderate difficulties with concentration, persistence, and pace." AR 20. To address these limitations in Plaintiff's RFC, the ALJ "limited the claimant to simple tasks and . . . simple work-related decisions." AR 20. In the ALJ's RFC discussion, this is the only reference to any limitations associated with Plaintiff's depression.

As Plaintiff points out, this reasoning is incomplete. That Plaintiff might be able to perform only "simple tasks" and make only "simple work-related decisions" addresses the complexity of any potential work. It says nothing of her ability to concentrate on work-related tasks over time, her ability to persist in completing those tasks, or the pace at which she might complete them. Although the ALJ mentions that Plaintiff is limited in concentration, persistence, and pace, it appears that the ALJ did not meaningfully incorporate those limitations into his RFC finding. *See Underwood v. Colvin*, No. 2:11-CV-354-JD-PRC, 2013 WL 2420874, at *2 (N.D. Ind. May 30, 2013) ("While it is true that the ALJ need not specifically include limitations on concentration, persistence and pace in the RFC finding, . . . the requirement that the ALJ 'consider' such limitations has certainly been interpreted to mean that a real 'evaluation' of the effect of those limitations on the claimant's ability to work must take place.")

Similarly, the ALJ concluded that Plaintiff had "mild difficulties in social functioning." AR 17. However, the ALJ did not discuss these difficulties in his RFC analysis. While the Commissioner argues that the ALJ considered Plaintiff's difficulties in social functioning in concluding that Plaintiff can "interact no more than frequently with supervisors, co-workers, and the public," the ALJ's opinion did not include that analysis; only the bare conclusion appears. Simply put, the ALJ failed to construct the required "logical bridge" between Plaintiff's asserted mental limitations –

8

limitations the ALJ acknowledged – and their effects on Plaintiff's RFC. *See Scott*, 297 F.3d at 595 (quoting *Steele*, 290 F.3d at 941).

As to Plaintiff's physical RFC, Plaintiff argues that the ALJ failed to consider the aggregate effect of her severe limitations. Plaintiff contends that the ALJ erred in addressing each limitation separately, rather than considering the limitations in combination. The Commissioner argues that the ALJ provided an appropriate and legally sufficient analysis of Plaintiff's limitations as warranted by the relevant evidence.

"Although . . . impairments may not on their own be disabling, that would only justify discounting their severity, not ignoring them altogether. Moreover . . . an ALJ must consider the combined effects of all of the claimant's impairments, even those that would not be considered severe in isolation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *see also Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011) ("Even if each problem assessed separately were less serious than the evidence indicates, the combination of them might be disabling."); *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008) ("[A]n ALJ is required to consider the aggregate effects of a claimant's impairments, including impairments that, in isolation, are not severe.") (citing 20 C.F.R. § 404.1523; *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003)).

The ALJ's opinion does not provide any analysis of the combined effects of Plaintiff's limitations. Instead, the ALJ analyzed each severe impairment separately, noting the limitations each imposed on Plaintiff's RFC. The ALJ did point out that Plaintiff's "obesity in combination with [her] musculoskeletal impairments is reasonably related to [her] allegations of pain and immobility." AR 19. However, he provided no traceable reasoning for his conclusion that Plaintiff could perform "light exertional work" despite the combined effects of her obesity, osteoarthritis, and spine issues.

9

AR 19.

Accordingly, the Court is remanding for additional proceedings consistent with this Opinion. On remand, the ALJ is instructed to assess how Plaintiff's severe impairments and their attendant symptoms, alone and in combination, affect her RFC.

B.  Plaintiff's Testimony

Plaintiff also argues that the ALJ did not adequately analyze Plaintiff's subjective statements concerning her symptoms. Plaintiff contends that the ALJ should have addressed each symptom allegation Plaintiff made, revealing how much or how little weight he gave each allegation. The Commissioner argues that the ALJ's analysis was proper, as the ALJ was not required to dissect each and every allegation Plaintiff made concerning her symptoms and limitations.

The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

> (i) [The claimant's] daily activities;
> (ii) The location, duration, frequency, and intensity of [] pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication . . . ;
> (v) Treatment . . . for relief of [] pain or other symptoms;
> (vi) Any measures . . . used to relieve your pain or other symptoms . . . ; and
> (vii) Other factors concerning [] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3). An ALJ is not required to give full credit to every statement of pain made by the claimant or to find a disability each time a claimant states he or she is unable to work, but "must 'consider the entire case record and give specific reasons for the weight given to the individual's statements.'" *Shideler v. Astrue*, 688 F.3d 306, 311 (7th Cir. 2012) (quoting *Simila v.*

*Astrue*, 573 F.3d 503, 517 (7th Cir.2009)).

In this case, the ALJ pointed out that Plaintiff "lives alone, reads bible, watches television, makes her bed, washes dishes, and goes grocery shopping with help." AR 21. The ALJ concluded that Plaintiff's ability to complete these activities was inconsistent with her testimony concerning the severity of her symptoms and limitations. AR 21. The ALJ failed, however, to discuss why Plaintiff's ability to do these minimally taxing activities "with help" cut against Plaintiff's testimony concerning her physical limitations. *See Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.").

In fact, the ALJ did not provide any analysis of why Plaintiff's ability to perform these limited activities contradicted her symptom testimony. Instead the ALJ stated simply that Plaintiff's ability to perform these activities suggested she was "not as limited as would be expected for a disabled individual." AR 21. However, the Seventh Circuit Court of Appeals has repeatedly criticized discounting a claimant's reported symptoms on the basis of an ability to take care of basic household chores. *See, e.g., Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009) ("An ALJ cannot disregard a claimant's limitations in performing household activities. The ALJ here ignored [the plaintiff]'s numerous qualifications regarding her daily activities" and methods of coping with pain); *Zurawski*, 245 F.3d at 887 (asserting that daily activities, such as doing laundry, helping children prepare for school, cooking, and washing dishes do not necessarily undermine or contradict a claim

of disabling pain).

To the extent the ALJ also relied on Plaintiff's ability to perform activities of daily living in concluding that she was not disabled, the Seventh Circuit has repeatedly emphasized that a person's ability to perform daily activities does not indicate an ability to work outside of the home. *See, e.g.*, *Punzio*, 630 F.3d at 712 ("[The plaintiff's] ability to struggle through the activities of daily living does not mean that she can manage the requirements of a modern workplace."); *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) ("We have cautioned the Social Security Administration against placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home . . . The pressures, the nature of the work, flexibility in the use of time, and other aspects of the working environment . . . often differ dramatically between home and office or factory or other place of paid work.").

Accordingly, remand is appropriate. Consistent with the discussion above, the ALJ is instructed to assess properly Plaintiff's testimony concerning her symptoms and limitations.

D. <u>Remedy</u>

Plaintiff requests that the Court reverse the Commissioner's decision and remand for an award of benefits. An award of benefits is appropriate "only if all factual issues have been resolved and the record supports a finding of disability." *Briscoe*, 425 F.3d at 356. All factual issues have not been resolved and, as a result, remand is the appropriate remedy.

More specifically, the ALJ did not include relevant limitations in his questioning of the vocational expert, including Plaintiff's limitations in concentration, persistence, and pace. The ALJ will need to develop this testimony to determine whether Plaintiff might successfully adjust to other work that exists in significant numbers in the national economy. Furthermore, Plaintiff did not

provide any argument on why an award of benefits would be appropriate. Accordingly, the Court is remanding this matter for further proceedings consistent with this Opinion.

**V.      Conclusion**

For the foregoing reasons, the Court hereby **GRANTS** the request contained in Plaintiff's Brief in Support of Her Motion to Reverse the Decision of the Commissioner of Social Security [DE 14], **REVERSES** the Administrative Law Judge's decision, and **REMANDS** this matter to the Commissioner for further proceedings consistent with this Opinion.

So ORDERED this 26th day of September, 2016.

s/ John E. Martin  
MAGISTRATE JUDGE JOHN E. MARTIN  
UNITED STATES DISTRICT COURT

cc:     All counsel of record